IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


| | | |
|---|---|---|
| JASON ANDREW JOHNSON and<br>TENNESSEE CENTER FOR POLICY<br>RESEARCH,<br><br>     Plaintiff,<br><br>v.<br><br>PHIL BREDESEN, in his official capacity<br>as the Governor of the State of Tennessee;<br>DALE H. TUTTLE, in his official capacity<br>as Chairman of the TENNESSEE<br>JUDICIAL SELECTION COMMISSION<br>and its remaining members in their official<br>capacity as members of the Commission;<br>ROBERT E. COOPER, JR., in his official<br>capacity as Attorney General for the State<br>of Tennessee; WILLIAM M. BARKER,<br>individually and in his official capacity as<br>Tennessee Supreme Court Justice;<br>JANICE M. HOLDER, individually and in<br>her official capacity as Tennessee Supreme<br>Court Justice; GARY R. WADE,<br>individually and in his official capacity as<br>Tennessee Supreme Court Justice; and<br>CORNELIA A. CLARK, individually and in<br>her official capacity as Tennessee Supreme<br>Court Justice,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. _____ |

## VERIFIED COMPLAINT

The Plaintiffs, Jason Andrew Johnson and Tennessee Center for Policy

Research, complaining of the Defendants' conduct, state as follows:

## PARTIES

1.    The Plaintiff, Jason Andrew Johnson, is a native Tennessean and a registered voter in Washington County, Johnson City, Tennessee which is located within the Eastern Grand Division of Tennessee. His address for purposes of his voter registration is 405 Magnolia Avenue, Johnson City, Tennessee 37604. He resides at 1111 Wade Avenue, Nashville, Davidson County, Tennessee 37203.

2.    The Plaintiff, Tennessee Center for Policy Research (TCPR) is an independent non-profit and non-partisan research educational instituted chartered under the laws of Tennessee. Its President is Jason Andrew Johnson. The Plaintiff, TCPR's principal place of business is 201 Fourth Avenue, North, Suite 625, Nashville, Tennessee 37201. The Plaintiff, TCPR's Mission Statement reflects that its purpose is to "[promote] personal freedom and limited government through policy solutions that [among others] promote and defend the rights guaranteed by the Tennessee and United States Constitutions [and] reflect the Founding Fathers' vision of a free society grounded in property rights and individual liberty based on personal responsibility."

3.    The Defendant, Phil Bredesen, is the duly elected Governor of the State of Tennessee. In accordance with Tenn. Code Ann. §§ 17-4-109 and 17-4-112, as Governor of the State of Tennessee, the Defendant, Bredesen has the sole authority to choose which individuals to appoint to the Supreme Court of Tennessee and intermediate appellate courts from nominees certified to him by the Tennessee

Judicial Selection Commission. The Defendant, Bredesen, is, of course, a resident and citizen of the State of Tennessee whose official address is State Capitol, First Floor, Nashville, Tennessee 37243.

4. The Defendants, Dale H. Tuttle, Chairman of the Tennessee Judicial Selection Commission and its remaining members have, in accordance with Tenn. Code Ann. §§ 17-4-109 and 17-4-112 the sole authority to nominate persons to be considered for appointment to a vacancy on the Supreme Court of Tennessee and the intermediate appellate courts. The Tennessee Judicial Selection Commission and its members are, of course, citizens and residents of the State of Tennessee whose official address is 26 North Second Street Building, Memphis, TN 38103.

5. The Defendant, Robert E. Cooper, Attorney General for the State of Tennessee. His official address is 425 Fifth Avenue, North, P. O. Box 20207, Nashville, TN 37202.

6. The Defendant, William M. Barker, is the Chief Justice of the Supreme Court for the State of Tennessee. His official address for service of process is in care of the State Attorney General, 425 Fifth Avenue, North, P. O. Box 20207, Nashville, TN 37202.

7. The Defendant, Janice M. Holder, is an Associate Justice of the Supreme Court for the State of Tennessee. Her official address for service of process is in care of the State Attorney General, 425 Fifth Avenue, North, P. O. Box 20207, Nashville, TN 37202.

8.     The Defendant, Gary R. Wade, is an Associate Justice of the Supreme Court for the State of Tennessee. His official address for service of process is in care of the State Attorney General, 425 Fifth Avenue, North, P. O. Box 20207, Nashville, TN 37202.

9.     The Defendant, Cornelia A. Clark, is an Associate Justice of the Supreme Court for the State of Tennessee. Her official address for service of process is in care of the State Attorney General, 425 Fifth Avenue, North, P. O. Box 20207, Nashville, TN 37202.

## JURISDICTION AND VENUE

This Court has jurisdiction to resolve the issues presented herein pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) as all or a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

10.     The eight (8) year terms of the five (5) members of the Supreme Court of Tennessee expired on August 31, 2006. In early 2006, Justices E. Riley Anderson and Adolpho A. Birch, Jr. each announced that they would be leaving the Supreme Court of Tennessee at the end of their terms of office and did not plan to file declarations of candidacy for a new eight (8) year term.

11.     Soon after those announcements, the Tennessee Judicial Selection Commission (Judicial Selection Commission), through its members, began the

4

statutory process for filling the vacancies which would occur upon expiration of Justice Anderson's and Birch's terms of office.

12.     In accordance with the provisions of Tenn. Code Ann. §§ 17-4-109, 17-4-112 and 17-4-116, the Judicial Selection Commission initiated the process for filling the vacancies which would occur at the time Justice Anderson's and Justice Birch's terms expired.  One of the expected vacancies, that of Justice Anderson, was subsequently filled by the Governor's appointment of Gary R. Wade, who was at the time of his appointment a member of the Court of Criminal Appeals of Tennessee.

13.     Following the appointment of Mr. Wade to the Supreme Court of Tennessee, the Judicial Selection Commission instituted the process for filling the vacancy created by the expiration of Justice Birch's term.  On July 18, 2006, the Judicial Selection Commission certified by letter to the Governor the names of three (3) nominees for the vacancy created by the expiration of Justice Birch's term: Richard H. Dinkins, J. Houston Gordon and George T. "Buck" Lewis.

14.     Approximately one (1) week later, on July 24, 2006, Richard H. Dinkins submitted a letter to the Governor withdrawing his name from consideration for appointment to the Supreme Court of Tennessee.  Governor Bredesen, that same day, wrote a letter to Mr. Mike Bottoms, the Chairman of the Judicial Selection Commission, which reads as follows:

> I am writing to return to the Judicial Selection
> Commission the panel of nominees certified to me last
> week for the vacancy on the Tennessee Supreme Court.  I
> have received a letter from Chancellor Richard Dinkins
> withdrawing his name as one of the three nominees, and

5

therefore I am requesting pursuant to Tenn. Code Ann. § 17-4-112(a) that the Commission submit a new panel of nominees.

I appreciate the outstanding work that Chancellor Dinkins has done as a trial court judge, and I respect his decision to put his children's needs ahead of his career. This State has been privileged over the past thirteen years to have an excellent Supreme Court that reflects the diversity of Tennessee. As you know, I have always sought to appoint judges who meet the highest professional and personal standards. Among such highly qualified persons, diversity is a significant factor that I believe should be considered. With Chancellor Dinkins' withdrawal, I no longer have the opportunity to consider that factor.

I therefore request that the Commission send me a new panel of nominees that includes qualified minority candidates. I further request that the Commission select the new panel as expeditiously as possible, so that I can make this appointment before September 1st, when the court vacancy occurs.

The Governor made clear by a subsequent letter dated August 9, 2006 that it was his intent to reject all three (3) names on the first panel certified to him by the Judicial Selection Commission on July 18, 2006.

15.     On September 7, 2006, the Judicial Selection Commission certified a second panel of nominees for the vacancy created by the expiration of Justice Birch's term. One of the individuals on this second panel, J. Houston Gordon, had also appeared on the first panel of nominees submitted to the Governor to fill the expired term of Justice Birch.

16.     The Governor objected to the inclusion of Mr. Gordon's name on the second panel, arguing he was entitled to three (3) new nominees on this second

panel. The Judicial Selection Commission maintained it had the sole authority under Tenn. Code Ann. §§ 17-4-109 and 17-4-112 to determine the nominees for the second panel.

17.     This dispute between the Governor and the Judicial Selection Commission resulted in the Governor filing a lawsuit on September 18, 2006 in the state courts of Tennessee seeking a declaration that the second panel was invalidly constituted. A review of the pleadings in the lawsuit filed by Governor Bredesen styled *Phil Bredesen v. Tennessee Judicial Selection Commission*, Davidson County Chancery No. 06-2275-III, reveals that none of the parties to the state court proceeding, including parties permitted to intervene, challenged the constitutionality of the Judicial Selection Commission's and the Governor's conduct in filling a vacancy for an eight (8) year term on the Supreme Court of Tennessee under the process proscribed by the Tennessee Plan for Judicial Selection and Evaluation, Tenn. Code Ann. § 17-4-101, *et seq*. (Tennessee Plan).

18.     In fact, the state courts of Tennessee have expressly refused to address the constitutionality of the Tennessee Plan as it relates to filling a vacancy for an eight (8) year term on the Court of Appeals of Tennessee in a case styled *DeLaney v. Thompson*, 982 S.W.2d 857 (Tenn. 1998). Other challenges to the constitutionality of the Tennessee Plan and an earlier Tennessee statutory scheme providing for selection of members of the Supreme Court of Tennessee and intermediate appellate courts have only addressed appointments for a two (2) year term in cases styled

*Hooker v. Thompson*, 1996 WL 570090 (Tenn. October 2, 1996) and *State of Tennessee ex rel. Shriver and Higgins v. Dunn*, 496 S.W.2d 480 (Tenn. 1973).

19.     The Memorandum Opinion filed by the trial court in *Phil Bredesen v. Tennessee Judicial Selection Commission*, Davidson County Chancery No. 06-2275-III upheld Governor Bredesen's challenge to the second panel nominated by the Judicial Selection Commission and presented to the Governor for the appointment to fill Justice Birch's expired term. The Court's opinion was predicated on a statutory construction of the Tennessee Plan and failed to address the constitutionality of the Tennessee Plan's provision which effectively proscribes the appointment of a member of the Supreme Court of Tennessee or intermediate appellate courts for an eight (8) year term. The Supreme Court of Tennessee affirmed as modified on February 21, 2007 the decision of the trial court and likewise did not address the constitutionality of the Tennessee Plan as it relates to the eight (8) year term for members of the Supreme Court of Tennessee and intermediate appellate courts of Tennessee.

20.     Indeed, members of the Supreme Court of Tennessee and intermediate appellate courts can only lawfully hold their judicial offices for an eight (8) year term if they are popularly elected by the qualified voters of Tennessee. Tenn. Const. Art. VI, § 3 requiring popular election for the eight (8) year term was adopted in the Tennessee Constitution of 1870. The 1796 and 1835 Constitutions provided for appointment of members of the Supreme Court of Tennessee by the General Assembly.

8

21.    Even after the 1870 Constitution was adopted in Tennessee, the General Assembly or "Legislature" retained broad authority for enacting legislation that directs the manner in which judicial vacancies must be filled.  Tenn. Const. Art. VII, § 4 reads as follows:

> The election of all officers, and the filling of all vacancies
> not otherwise directed or provided by this Constitution,
> shall be made in such manner as the Legislature shall
> direct.

22.    Clearly the General Assembly or "Legislature" has the sole authority under the 1870 Constitution, Art. VII, § 4 to prescribe the manner in which judicial vacancies are "elected" or "filled" when those vacancies occur due to the death, disability or voluntary retirement of an incumbent during his or her unexpired term.  Tenn. Const. Art. VII, § 5 provides that "[n]o appointment or election to fill [such] a vacancy shall be made for a period extending beyond the unexpired term ... and such vacancy shall be filled at the next Biennial election recurring more than thirty days after the vacancy occurs."

23.    Because Tenn. Const. Art. VI, § 3 directs or provides members of the Supreme Court of Tennessee must be popularly elected by the "qualified voters" of the State, the General Assembly is not constitutionally permitted to prescribe by statutory enactment the manner in which an eight (8) year term can be filled. Specifically, Tenn. Const. Art. VI, § 3 provides as follows:

> The Judges of the Supreme Court shall be elected by the
> qualified voters of the State.  The Legislature shall have

9

> power to prescribe such rules as may be necessary to
> carry out the provisions of section two of this article.
> Every Judge of the Supreme Court shall be thirty-five
> years of age, and shall before his election have been a
> resident of the State for five years. His term of service
> shall be eight years.

An effort was made to amend Tenn. Const. Art. VI in 1977. The proposed
amendment which was presented to the voters of Tennessee included a provision
requiring the retention election rather than popular election of members of the
Supreme Court of Tennessee and intermediate appellate courts. This proposed
amendment to Tenn. Const. Art. VI was defeated.

24.    Nonetheless, in enacting Tenn. Code Ann. § 17-4-116, the General
Assembly has done precisely that which the Constitution of Tennessee forbids it to
do, eliminate the popular election of members of the Supreme Court of Tennessee
and intermediate appellate courts for an eight (8) year term and substitute in its
place selection by appointment followed by a retention election rather than popular
election for the balance of the term or six (6) years.

Tenn. Code Ann. § 17-4-116, as amended in 1999, reads as follows:

> (a) If an incumbent appellate court judge, whether
> appointed or elected, fails to file a declaration of
> candidacy for election to an unexpired term or to a full
> eight (8) year term within the prescribed time, or if such
> judge withdraws as a candidate after receiving a
> recommendation "for retention" from the judicial
> evaluation commission and filing the required declaration
> of candidacy, then a vacancy is created in the office at the
> expiration of the incumbent's term effective September 1.
> In this event the judicial selection commission shall
> furnish a list of nominees for the office to the governor as

provided by § 17-4-109. From such list, the governor shall appoint a successor to fill the vacancy effective September 1. The appointment is subject to the action of the electorate in the next regular August election. The appointee shall file a declaration of candidacy and be voted on as provided in §§ 17-4-114 and 17-4-115.

(b) If the vacancy occurs more than thirty (30) days before the regular August election preceding the end of the term, the appointee is subject to election as provided in §§ 17-4-114 and 17-4-115.

(c)(1) If a majority of those voting on the question vote in favor of electing the candidate, the candidate is duly elected to the office for the remainder of the unexpired term or a full eight (8) year term, as the case may be, beginning September 1, and the candidate shall be given a certificate of election.

(2) If a majority or one half (1/2) of those voting n the question vote against retaining the candidate in office, then the candidate may not take office on September 1, and a vacancy exists as of September 1 after the regular August election. The governor shall fill the vacancy from a group of three (3) nominees submitted by the judicial selection commission as provided in § 17-4-112.

(d) If the vacancy occurs less than thirty–one (31) days before the regular August election, the appointee will not be voted on in such election and will take office on September 1. The term of office will be as provided in § 17-4-112(b).

25.   Justices Anderson and Birch concluded their tenure on the Supreme Court of Tennessee in a factual context precisely like the one contemplated by Tenn. Code Ann. § 17-4-116. They held office until their term expired but failed to file a declaration of candidacy for election since they had no desire to seek another eight (8) year term. This conduct by Justices Anderson and Birch triggered the

11

nominating and appointment process contemplated by Tenn. Code Ann. §§ 17-4-109, 17-4-112 and 17-4-116 which is in direct contravention of the Constitution of Tennessee as it relates to the eight (8) year term on the Supreme Court of Tennessee and incidentally the eight (8) year term on the intermediate appellate courts.

26.     As a consequence, Governor Bredesen's appointment of Gary R. Wade to fill Justice Anderson's seat on the Supreme Court of Tennessee was unlawful, unconstitutional and invalid.  On information and belief, the Judicial Selection Commission will meet on April 13, 2007 to nominate a second panel of nominees for Governor Bredesen to consider and from which to appoint Justice Birch's replacement.

27.     Any conduct by the Judicial Selection Commission as described in paragraph 26 will likewise be unlawful, unconstitutional and invalid since members of the Supreme Court of Tennessee and intermediate appellate courts who seek eight (8) year terms must be elected by the qualified voters of Tennessee in popular elections.  In truth and in fact, any member of the Supreme Court of Tennessee or the intermediate appellate courts who holds his or her seat on the bench based upon the outcome of a retention election rather than a popular election is unlawfully, unconstitutionally and invalidly doing so.  This extraordinary threat to the administration of justice in Tennessee can be corrected by granting the relief sought and without creating chaos in the Tennessee judicial system because the General Assembly of Tennessee has the authority under Tenn. Const. Art. VII, § 4 to fill any

vacancies which may be created by a declaratory judgment of this Court favorable to the Plaintiffs, Johnson and TCPR.

28.    The provisions of Tenn. Code Ann. § 17-4-116 and other aspects of the Tennessee Plan which relate to, affect or implicate the selection of members of the Supreme Court of Tennessee and the intermediate appellate courts deprive the qualified voters of Tennessee of their property right to vote in a popular election for the justice and/or judge of their choice as guaranteed by the Constitution of Tennessee and the Constitution of the United States of America.

29.    The Tennessee Plan became effective September 1, 1994. Since its effective date, the Tennessee Plan has been the subject of numerous judicial challenges and controversies as in part detailed previously in this Verified Complaint and including a challenge to the application of the Tennessee Plan by candidates for and some sitting members of the intermediate appellate courts and Supreme Court of Tennessee in *Lillard v. Burson,* 933 F.Supp. 698 (W.D.Tenn. 1996). Despite this and the enormous significance of this matter for the administration of justice in Tennessee, the Supreme Court of Tennessee has refused to address the constitutionality of the Tennessee Plan as it relates to the eight (8) year term for members of the Supreme Court of Tennessee and intermediate appellate courts.

30.    This refusal of the Tennessee judicial system to address these fundamental matters for the citizens of Tennessee and the judiciary was

characterized by the dissenters in *DeLaney v. Thompson*, 982 S.W.2d 857, 861

(Tenn. 1998) as follows:

> Rather than contend with the constitutional issues, the
> majority, deciding this case by statutory construction,
> utilizes a construction which reflects neither the meaning
> of the statute nor the positions of the parties. In doing so,
> the majority opinion neither clarifies issues of importance
> to the electorate and judiciary, nor discourages future
> litigation on the same subject.

Respectfully, the judicial system of Tennessee has defaulted on its obligation to

address the constitutional merits of the Tennessee Plan. And, in so doing, has

deprived the qualified voters of their property rights to vote for judicial candidates

of their choice. Regardless of the rule in other jurisdictions, the right to vote in

popular elections for judicial offices of ones choice in Tennessee is a property right.

This property right is entitled to the protection of the Fourteenth Amendment to the

Constitution of the United States of America. As the Court determined in *Joyner v.

Browning*, 30 F.Supp. 513, 517 (W.D.Tenn. 1939) *citing State v. Staten*, 6 Cold. 233,

46 Tenn. 223 (1869):

> The elective franchise is a right which the law protects
> and enforces as jealously as it does property in chattels or
> lands. It matters not by what name it is designated -- the
> right to vote, the elective franchise, or the privilege of the
> elective franchise – the person who, under the
> Constitution and laws of the State, is entitled to it, has a
> property in it, which the law maintains and vindicates, as
> vigorously as it does any right of any kind which men may
> have and enjoy.

14

Qualified voters in Tennessee like the Plaintiff, Johnson and organizations like the Plaintiff, TCPR organized to promote good government absolutely have standing to assert the unlawful deprivation of their property right to vote under the due process and equal protection clause of the Fourteenth Amendment of the United States Constitution.

31.     Moreover, qualified voters like the Plaintiff, Johnson, have a property right to vote for candidates of their choice to fill seats on the Supreme Court of Tennessee and intermediate appellate courts for eight (8) year terms.  Provisions of the Tennessee Plan which deprive the Plaintiff, Johnson and other qualified voters of their right to do so violate rights guaranteed them by the Fourteenth Amendment to the Constitution of the United States.

CAUSES OF ACTION

COUNT I

The Anderson and Birch Seats

32.     Paragraphs 1-31 are realleged and incorporated herein.

33.     The nomination of Gary R. Wade and his appointment by Governor Bredesen to fill the seat vacated by Justice Riley Anderson when his term expired in accordance with the provisions of Tenn. Code Ann. §§ 17-4-109, 17-4-112 and 17-4-116 deprived the qualified voters of Tennessee of their right under Tenn. Const. Art. VI, § 3 to popularly elect a justice of their choice to the Supreme Court of Tennessee for an eight (8) year term.

34.     Likewise, the conduct of the Judicial Selection Commission and Governor Bredesen in preparing for the nomination and appointment of a nominee to fill Justice Birch's seat, which he held until his term expired, in accordance with Tenn. Code Ann. §§ 17-4-109, 17-4-112 and 17-4-116 will deprive the qualified voters of Tennessee of their property right under Tenn. Const. Art. VI, § 3 to popularly elect a justice of their choice to the Supreme Court of Tennessee for an eight (8) year term.

35.     In the event the Judicial Selection Commission is allowed to nominate and Governor Bredesen is allowed to appoint an individual pursuant to Tenn. Code Ann. §§ 17-4-109, 17-4-112 and 17-4-116 to fill the seat of Justice Birch which was vacated when his term expired on August 31, 2006, the qualified voters of Tennessee will be deprived of their property right guaranteed by the Fourteenth Amendment of the United States Constitution, the right to popularly elect a justice of their choice to the Tennessee Supreme Court for an eight (8) year term.  The deprivation of this property right constitutes immediate and irreparable injury, loss or damage.

36.     The Plaintiffs, Johnson and TCPR, have a strong likelihood of success on the merits.  The Plaintiffs, Johnson and TCPR, have no adequate remedy at law. On balance, the loss or injury the Plaintiff, Johnson, and other qualified voters of Tennessee will suffer if the Judicial Selection Commission is allowed to nominate and Governor Bredesen is allowed to appoint pursuant to Tenn. Code Ann. §§ 17-4-109, 17-4-112 and 17-4-116 outweighs the loss or injury the Judicial Selection

16

Commission, Governor Bredesen and the other Defendants will suffer if injunctive relief is not granted. Also significant public policy considerations favor the issuance of injunctive relief prohibiting the Judicial Selection Commission and Governor Bredesen from nominating and appointing Justice Birch's successor until a judgment in this matter can be rendered on the merits as the acts or omissions of the Judicial Selection Commission may tend to render a final judgment ineffectual.

37.    As a direct and proximate cause of the immediate and irreparable injury that the Plaintiff, Johnson and other qualified voters of Tennessee, will suffer if the Judicial Selection Commission is allowed to nominate and Governor Bredesen is allowed to appoint Justice Birch's successor, the Plaintiffs, Johnson and TCPR are entitled to the injunctive relief sought. Moreover, as a direct and proximate cause of the injury the Plaintiff, Johnson and other qualified voters of Tennessee have suffered given Justice Gary R. Wade's appointment rather than popular election of a candidate of choice to a seat on the Supreme Court of Tennessee, the Plaintiffs, Johnson and TCPR are entitled to the relief sought.

COUNT II

Retention Election Statute

38.    Paragraph 1-37 are realleged and incorporated herein.

39.    The Tennessee Plan, Tenn. Code Ann. § 17-4-101, *et seq.* is unconstitutional to the extent it permits or directs the retention election of members of the Supreme Court of Tennessee and intermediate appellate courts for a full eight (8) year term on the bench. The Tenn. Const. Art. VI, § 3 requires the

17

popular election of members of the Supreme Court of Tennessee and the intermediate appellate courts. Every member of the Supreme Court and intermediate appellate courts elected for eight (8) year terms through retention elections are holding their seats on the bench unlawfully and unconstitutionally.

40.    The General Assembly of Tennessee cannot lawfully amend the Constitution of Tennessee without the consent of a majority of the qualified voters in Tennessee. In 1977, the citizens of Tennessee specifically rejected the proposed amendment of Tenn. Const. Art. VI to require retention election rather than popular election of members of the Supreme Court of Tennessee and intermediate appellate courts for an eight (8) year term.

41.    Despite this, the General Assembly of Tennessee enacted the Tennessee Plan which permits or requires the retention election rather than popular election of members of the Supreme Court and intermediate appellate courts for eight (8) year terms. In so doing, the General Assembly of Tennessee has deprived the Plaintiff, Johnson and other qualified voters of Tennessee of a property right guaranteed by the due process and equal protection clauses of the Fourteenth Amendment rather than popular election of candidates of choice to the Supreme Court of Tennessee and members of the intermediate appellate courts for eight (8) year terms. The Plaintiff, Johnson cannot vote in popular elections for a candidate of his choice to the Supreme Court of Tennessee and intermediate appellate courts.

42.    As a direct and proximate cause of the injury the Plaintiffs, Johnson and TCPR and other qualified voters of Tennessee have suffered due to this

unlawful and unconstitutional conduct of the General Assembly of Tennessee, the Plaintiffs, Johnson and TCPR are entitled to the relief sought.

COUNT III

Pendent State Claim Violation – Constitution of Tennessee

43.    Paragraphs 1-42 are realleged and incorporated herein.

44.    The Tennessee Plan, Tenn. Code Ann. § 17-4-101, *et seq.* is unconstitutional as a matter of Tennessee constitutional law to the extent it permits or directs the retention election of members of the Supreme Court of Tennessee and intermediate appellate courts for a full eight (8) year term on the bench. Tenn. Const. Art. VI, §§ 3 and 4, respectively, require the popular election of members of the Supreme Court of Tennessee and the intermediate appellate courts. Every member of the Supreme Court and intermediate appellate courts elected for eight (8) year terms through retention elections are holding their seats on the bench unlawfully and unconstitutionally.

45.    The General Assembly of Tennessee cannot lawfully amend the Constitution of Tennessee with the consent of a majority of the qualified voters in Tennessee. In 1977, the citizens of Tennessee specifically rejected the proposed amendment of the Tenn. Const. Art. VI to require retention election of members of the Supreme Court of Tennessee and intermediate appellate courts for an eight (8) year term.

46.    Despite this, the General Assembly of Tennessee enacted the Tennessee Plan which permits or requires the retention election rather than

19

popular election of members of the Supreme Court of Tennessee and members of the intermediate appellate courts for eight (8) year terms. In so doing, the General Assembly of Tennessee has deprived the Plaintiff, Johnson and other qualified voters of Tennessee of rights guaranteed by Tenn. Const. Art. VI, § 3 and its conduct is unconstitutional as a matter of Tennessee constitutional law. The Plaintiff, Johnson cannot vote for candidates of his choice to be members of the Supreme Court of Tennessee or intermediate appellate courts.

47.     As a direct and proximate cause of the injury the Plaintiffs, Johnson and TCPR and other qualified voters of Tennessee have suffered due to this unlawful and unconstitutional conduct of the General Assembly of Tennessee, the Plaintiffs, Johnson and TCPR are entitled to the relief sought.

<u>RELIEF</u>

The Plaintiffs, Johnson and TCPR, request this Court to grant the following relief:

1.     Enter a judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P. declaring the appointment of Gary R. Wade to the Supreme Court of Tennessee in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

2.     Enter a judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P. declaring the conduct of the Judicial Selection Commission to nominate new candidates for the vacant seats of Justice A. A. Birch on the Supreme

Court of Tennessee in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

3. Enter a judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P. declaring the retention election of members of the Supreme Court of Tennessee and the intermediate appellate courts for eight (8) year terms in violation of the due process clause of the United States Constitution.

4. Enter a judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P. declaring the retention election of members of the Supreme Court of Tennessee and the intermediate appellate courts for eight (8) year terms in violation of Tenn. Const. Art. VI, §§ 3 and 4 of the Constitution of Tennessee.

5. Enter a temporary restraining order, preliminary and permanent injunction pursuant to Rule 65, Fed.R.Civ.P prohibiting the Judicial Selection Commission from nominating three (3) candidates for Governor Bredesen to appoint as Justice A. A. Birch's replacement to the Supreme Court of Tennessee.

6. Enter an Order pursuant to 28 U.S.C. § 2284 empaneling a three (3) judge court to try this case.

7. Grant Plaintiffs such other, further and general relief as this Court may deem appropriate.

Respectfully submitted,

Robert L. DeLaney (No. 4319)
323 Union Street, Fourth Floor
Nashville, TN 37201
(615)244-3000

21

# VERIFICATION

STATE OF TENNESSEE     )
                                )
COUNTY OF DAVIDSON    )

      I, Jason Andrew Johnson, President of Tennessee Center for Policy Research, verify that the facts and statements contained in the foregoing Complaint are true and correct to the best of my information, knowledge and belief.

                                        Jason Andrew Johnson

Sworn to and subscribed
before me this _6th_ day
of April, 2007.

_____
Notary Public

My Commission Expires JULY 25, 2009

# **VERIFICATION**

STATE OF TENNESSEE          )
                            )
COUNTY OF DAVIDSON          )

I, Jason Andrew Johnson, verify that the facts and statements contained in the foregoing Complaint are true and correct to the best of my information, knowledge and belief.

_Jason Andrew Johnson_

Sworn to and subscribed
before me this _____ day
of April, 2007.

_Notary Public_

My Commission Expires JULY 25, 2009