## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| JASON ANDREW JOHNSON and TENNESSEE CENTER FOR POLICY RESEARCH, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PHIL BREDESEN, in his official capacity as the Governor of the State of Tennessee; DALE H. TUTTLE, in his official capacity as Chairman of the TENNESSEE JUDICIAL SELECTION COMMISSION and its remaining members in their official capacity as members of the Commission; ROBERT E. COOPER, JR., in his official Capacity as Attorney General for the State of Tennessee; WILLIAM M. BARKER, individually and in his official capacity as Tennessee Supreme Court Justice; JANICE M. HOLDER, individually and in her official capacity as Tennessee Supreme Court Justice; GARY R. WADE, individually and in his official capacity as Tennessee Supreme Court Justice; and CORNELIA A. CLARK, individually and in her official capacity as Tennessee Supreme Court Justice, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

---

## DEFENDANTS' RESPONSE TO
## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

---

Before this Court is the motion of Plaintiffs Jason Andrew Johnson and the Tennessee

Center for Policy Research (hereinafter "Plaintiffs") for a Temporary Restraining Order.

Defendants, in their official capacities, submit this response in opposition. This Court should deny the motion because: 1) Plaintiffs do not have standing; 2) Plaintiffs cannot demonstrate any irreparable harm if the motion is denied; and 3) harms to others and the public interest weigh heavily in favor of denying the motion.

## BACKGROUND

Plaintiffs filed this action on April 6, 2007. The Complaint alleges three causes of action. First, it is alleged that the nomination and appointment of Tennessee Supreme Court Justice Gary Wade, as well as the future nomination and appointment of a person to fill the vacancy on the Court created by the retirement of Justice Birch "deprived the qualified voters of Tennessee of their right under Tenn. Const. Art. VI, § 3 to popularly elect a justice of their choice to the Supreme Court of Tennessee[.]" Plaintiffs assert that these violations deprive Tennessee voters "of their property right guaranteed by the Fourteenth Amendment of the United States Constitution, the right to popularly elect a justice of their choice to the Tennessee Supreme Court[.]" (Complaint, pp. 15-17).

Second, it is alleged that Tenn. Code Ann. § 17-4-101, *et seq.*, (hereinafter, "the Tennessee Plan"), "is unconstitutional to the extent it permits or directs the retention election of members of the Supreme Court of Tennessee and intermediate appellate courts for a full eight (8) year term on the bench." (Complaint, p. 17). According to the Complaint, in enacting the Tennessee Plan, "the General Assembly of Tennessee has deprived Plaintiff, Johnson and other qualified voters of Tennessee of a property right guaranteed by the due process and equal protection clauses of the Fourteenth Amendment[.]" (Complaint, p. 18). Plaintiffs assert that the result of this allegedly unconstitutional action is that "[e]very member of the Supreme Court and

- 2 -

intermediate appellate courts elected for eight (8) year terms through retention elections are holding their seats on the bench unlawfully and unconstitutionally." (Complaint, p. 18).

The third cause of action (listed under the heading of "Pendant State Claim Violation - Constitution of Tennessee") alleges that the Tennessee Plan is "unconstitutional as a matter of Tennessee constitutional law to the extent it permits or directs the retention election...for a full eight (8) year term on the bench." (Complaint, p. 19). In enacting the Tennessee Plan, "the General Assembly has deprived...qualified voters of Tennessee of rights guaranteed by Tenn. Const. Art. VI, § 3 and its conduct is unconstitutional as a matter of Tennessee constitutional law." (Complaint, p. 20).

In light of these allegations, Plaintiffs ask for the following relief: 1) a judgment declaring that the appointment of Justice Gary Wade violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution; 2) a judgment declaring that the conduct of the Judicial Selection Commission in nominating candidates for the current vacancy on the Tennessee Supreme Court violates the Due Process Clause of the Fourteenth Amendment; 3) a judgment declaring that the retention election procedures of the Tennessee Plan violates the Due Process Clause of the Fourteenth Amendment; 4) a judgment declaring that the retention election procedures of the Tennessee Plan violate Art. VI, §§ 3,4, of the Constitution of the State of Tennessee; 5) a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the Judicial Selection Commission from nominating candidates to fill the existing vacancy on the Tennessee Supreme Court; 6) an order empaneling a three judge court to try this case; and 7) any further relief this Court may deem appropriate. (Complaint, pp. 20-21).

**ARGUMENT**

I.    **Because Plaintiffs lack standing to assert their claims, this Court lacks subject matter jurisdiction and should not entertain this application for a temporary restraining order.**

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975).

> Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984).

Courts should apply a three pronged inquiry when determining whether a plaintiff has standing to bring an action. First, plaintiffs must demonstrate that they have suffered an injury in fact that is both concrete in nature and particular to them. *See Allen*, 468 U.S. at 755, 104 S.Ct. at 3326-27; *Warth*, 422 U.S. at 502, 95 S.Ct. at 2207. Second, the injury claimed must be fairly traceable to the actions of the defendant. *See Allen*, 468 U.S. at 755, 104 S.Ct. at 3326-27; *Warth*, 422 U.S. at 504-05, 95 S.Ct. at 2208. Third, the injury must be redressable by cessation of the defendant's conduct. *See Allen*, 468 U.S. at 758-59, 104 S.Ct. at 3328-29; *Warth*, 422 U.S. at 504-05, 95 S.Ct. at 2208. Here, Plaintiffs lack standing because they have not alleged an injury particular to them. Instead, Plaintiffs' grievance is one alleging a generalized grievance shared by all voters of Tennessee.

In *Warth*, the Supreme Court stated, "the Court has held that when the asserted harm is a

'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." 422 U.S. at 499, 95 S.Ct. at 2205. In *Schelsinger v. Reservists Committee to the Stop the War*, the Supreme Court stated, "standing to sue may not be predicated upon an interest...which is held in common by all members of the public[.]" 418 U.S. 208, 220, 94 S.Ct. 2925, 2932 (1974).

Most recently, in *Lance v. Coffman*, the Supreme Court, quoting from and reaffirming a prior holding, stated,

> [t]he plaintiff sought to assert "only the right, possessed by every citizen, to require that the Government be administered according to law and that the public moneys be not wasted. Obviously," we held, "this general right does not entitle a private citizen to institute [a suit] in the federal courts."

127 S.Ct. 1194, 1197 (2007) (internal citations omitted). Even more pertinent to this case, the Supreme Court in *Lance* stated,

> The only injury plaintiffs allege is that the law - specifically the Elections Clause- has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.

127 S.Ct. at 1198.

As described in detail above, all three causes of actions alleged by Plaintiffs here stem from their claim that the Tennessee Plan violates the Tennessee Constitution and deprives Plaintiffs of rights provided therein. This injury, by their own admission, is one shared by all voters in Tennessee. Much like the claim in *Lance*, the injury is a "generalized grievance about the conduct of government[,]" and just as the Supreme Court in *Lance*, this Court should find

- 5 -

that Plaintiffs do not have standing to litigate the issue.[1]

## II. Plaintiffs have failed to demonstrate any entitlement to a temporary restraining order.

The following four factors must be considered in determining whether a temporary restraining order should issue: 1) whether the movant is likely to prevail on the merits; 2) whether the movant will suffer an irreparable injury if the court does not grant a temporary restraining order; 3) whether a temporary restraining order would cause substantial harm to others, and; 4) whether a temporary restraining order would be in the public interest. *See, e.g., G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F. 3d 1071, 1076 (6th Cir. 1994).

"[A temporary restraining order], however is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

---

[1]It is unclear from the pleadings whether Plaintiff Tennessee Center for Policy Research is asserting claims on behalf of itself or on behalf of its members. If, it is asserting claims on behalf of its members, then it lacks standing for want of particularized injury, as discussed above. If, however, it is asserting organizational/associational standing on its own behalf, than a separate analysis is required.

An organization only has standing if it can meet the three pronged test for individuals. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378, 102 S.Ct. 1114, 1124 (1982). Tennessee Center for Policy Research must show that it "'has suffered injury in fact,' including '[s]uch concrete and demonstrable injury to the organization's activities-with [a] consequent drain on the organization's resources-constitut[ing] ... more than simply a setback to the organization's abstract social interests.'" *National Taxpayers Union, Inc. v. U.S.*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) (quoting *Havens Realty Corp.*, 455 U.S. at 379, 102 S.Ct. at 1124). The cases Plaintiffs cite (Plaintiff's Memorandum in Support, pp. 13-14) in support of organizational standing are First Amendment cases in which the organizations alleged injuries specific to them and the exercise of their rights. *See North Dakota Family Alliance, Inc. v. Bader*, 361 F.Supp.2d 1021 (D.N.D. 2005); *Alaska Right to Life Political Action Committee v. Jeffrey Feldman*, 380 F.Supp.2d 1080 (D.Ak. 2005).

Here, Plaintiff Tennessee Center for Policy Research has not alleged anything other than "a setback to the organization's abstract social interests[.]" Thus, it does not have organizational standing to sue.

- 6 -

persuasion." *Moore v. Consol. Edison Co.,* 409 F.3d 506, 510 (2d Cir. 2005) (*quoting Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L.Ed.2d 162 (1997) (internal quotation omitted).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Freedom Holdings, Inc., v. Spitzer,* 408 F.3d 112, 114 (2d Cir. 2005), *quoting Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir. 1999). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a [temporary restraining order] they will suffer 'an injury that is neither remote or speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Freedom Holdings, Inc.,* 408 F.3d at 114, *quoting Rodriguez,* 175 F.3d at 234-35 (quotation omitted)."

Plaintiffs in the present case have failed to demonstrate imminent and irreparable harm if this Court does not grant a Temporary Restraining Order. Furthermore, Plaintiffs have failed to carry their burden of making a clear showing that the other criteria for issuance of an injunction weigh in favor of granting a temporary restraining order.

    **A.**    **Plaintiffs have failed to demonstrate any irreparable harm that would result if the Judicial Selection Commission nominates three candidates to fill the current vacancy on the Tennessee Supreme Court.**

Plaintiffs seek a Temporary Restraining Order "prohibiting the Judicial Selection Commission from nominating three (3) candidates for Governor Bredesen to appoint as Justice A. A. Birch's replacement to the Supreme Court of Tennessee." (Complaint, p. 21). The Judicial Selection Commission was ordered by the Tennessee Supreme Court to reinstitute the

- 7 -

selection process for a second panel of the three nominees to be certified to the Governor to fill the current judicial vacancy on that court. *Bredesen v. Tennessee Judicial Selection Commission,* 214 S.W.3d 419 (Tenn., Feb. 21, 2007). Shortly after the Tennessee Supreme Court's decision the Judicial Selection Commission briefly opened the application process and scheduled public hearings and interviews with the applicants for April 13, 2007 (commencing at 9:30 a.m.).

Plaintiffs argue that this Court should restrain the Judicial Selection Commission from fulfilling its responsibilities under state law in order to protect them against an immediate and irreparable harm to their alleged right to vote for the justice of their choice.

The argument will not withstand analysis. First, to the extent Plaintiffs contend that the appointment of Justice Wade in 2006 violated their alleged right to vote to fill the vacancy created by Justice Anderson's retirement from the Tennessee Supreme Court, that injury has already occurred. Quite obviously, an order restraining the Judicial Selection Commission from nominating candidates to fill the remaining vacancy on the Court will not redress that alleged injury. But more fundamentally, the provision of the Tennessee Constitution cited by Plaintiffs as the source of their alleged right to vote for the Justice of their choice - Article VI, § 3 - does not even address the procedure for filling judicial vacancies. The filling of vacancies on the courts is governed instead by Article VII, § 4, which provides that "[t]he election of all officers, *and the filling of vacancies not otherwise directed or provided by the Constitution*, shall be made in such manner as the Legislature shall direct." (Emphasis added). In the case of judicial officers, the manner for filling vacancies directed by the legislature is the one set forth in the Tennessee Plan. The Commission's performance of its duties under the Tennessee Plan will thus

not harm any constitutional right of Plaintiffs. Indeed, under the Tennessee Constitution, the next date on which an election for judges could lawfully occur - whatever form it takes - is in August 2008. *See* Tenn. Const. Art. VII, § 5 ("No special election shall be held to fill a vacancy in the office of Judge...but at the time herein fixed for the biennial election of civil officers").

**B.    The issuance of the requested temporary restraining order would cause substantial harm to others.**

An order restraining the Judicial Selection Commission from nominating three (3) candidates to fill the vacancy of the Tennessee Supreme Court would cause substantial harm to others - in particular, the Tennessee Supreme Court, the Judicial Selection Commission, and the applicants for the vacancy on the Tennessee Supreme Court. The seventeen (17) member Judicial Selection Commission, comprised of prominent attorneys and lay persons from throughout the State of Tennessee, is scheduled to conduct public hearings and private interviews of the sixteen (16) applicants (which include private practice attorneys, a claims commissioner, and judges) on Friday, April 13, 2007. During the public hearing section, applicants for the vacancy on the Tennessee Supreme Court may present up to three persons to speak on their behalf. Needless to say, much logistical planning has occurred and considerable expense has been incurred, so that all of these parties will be able to participate in the scheduled proceeding.

Even more important, the Tennessee Supreme Court is impaired in its operation by continuing to have one of its five seats vacant. In *Bredesen v. Tennessee Judicial Selection Commission,* 214 S.W.3d at 440-441, n. 12, the Court noted that the vacancy on the Court has existed since the first of September 2006, and the Court encouraged the Judicial Selection Commission to act expeditiously in selecting and certifying three nominees to fill the vacancy.

- 9 -

Further delay in the process of filling this vacancy on the Court would be detrimental to the functioning of Tennessee's highest court.

### C. The public's interest weighs heavily against the issuance of a temporary restraining order.

The public interest will be harmed by further delay in filling the current vacancy on the Tennessee Supreme Court. Tennessee's judiciary, and the public served by it, benefits from having a full panel of Tennessee Supreme Court Justices. Contrary to Plaintiffs's assertions, allowing the vacancy on the Tennessee Supreme Court to be filled would not deny citizens a fundamental state law right to vote. (See Section D *infra*).

### D. Plaintiffs do not have a substantial likelihood of success on the merits.

Plaintiffs cannot demonstrate a substantial likelihood of success on the merits of their claims. First, as described in detail above, Plaintiffs' lack of standing is fatal to their claims. Second, the Tennessee Supreme Court has already spoken to issues presented here, and this Court should not disturb its ruling.

Art. VI, § 3, of the Tennessee Constitution provides, "[t]he Judges of the Supreme Court shall be elected by the qualified voters of the State." Art. VI, § 4, provides, "[t]he judges of...inferior Courts...shall be elected by the qualified voters[.]" Plaintiffs assert that these provisions require the *popular* election of justices and judges in Tennessee. The Tennessee Supreme Court has, however, already held that *retention* elections of judges satisfy the requirements of Art. VI, §§ 3 and 4. *See Higgins v. Dunn*, 496 S.W.2d 480, 488-89 (Tenn. 1973). Thus, Plaintiffs' claims must fail.

While Plaintiffs are making a federal claim, alleging the unconstitutional deprivation of a property right pursuant to the Fourteenth Amendment to the United States Constitution, the

property right that gives rise to the allegedly unconstitutional deprivation is founded in state law. As a right granted pursuant to state law, it is subject to definition by state law. As the highest court of the State, the Tennessee Supreme Court is the final arbiter of state law. The Tennessee Supreme Court has already held that retention elections satisfy the requirement that Justices and judges be elected by "the qualified voters of the State." This ruling is final and binding upon all courts interpreting the Tennessee Constitution.

Thus, the Tennessee Plan, and the processes contained therein for retention elections, are constitutional, do not violate any rights granted by the Tennessee Constitution, and cannot be the basis of a federal claim pursuant to the Due Process Clause of the United States Constitution. For this reason, Plaintiffs have no likelihood of success on the merits of their claims.

## III. Abstention is justified under the Pullman Doctrine in this case because state law issues predominate.

The doctrine articulated in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941), basically provides that when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, abstention may be justified under principles of comity in order to avoid needless friction with state policies. Application of the *Pullman* doctrine requires a two-step analysis by the court. The first step is to determine whether the following special circumstances exist: (1) uncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) state law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and (3) the possibility that a federal's courts erroneous construction of state law would be disruptive of important state policies. If the court finds all

- 11 -

three of the special circumstances are presented, then the court must make a discretionary determination whether abstention is in fact appropriate under the circumstances of the particular case, based upon the weight of these criteria and other relevant factors. *See Chezsez III Corp. v. Township of Union,* 945 F.2d 628, 631-634 (3d cir. 1991), *cert. denied,* 503 U.S. 907, 112 S. Ct. 1265 (1992). All the Pullman special circumstances exist in the present case. Plaintiffs' federal claims are based entirely on their (demonstrably erroneous) interpretations of state law requirements. Those issues of interpretation are properly amenable to resolution by state courts, and it is probable that erroneous construction by a federal court would be disruptive of the state's important sovereign interests in governing the operation of its own judicial system.

## **CONCLUSION**

The application for a temporary restraining order should be denied.

Respectfully submitted,

ROBERT E. COPPER, JR.
Attorney General and Reporter


/s_____
STEVEN A. HART (BPR #007050)


/s_____
JANET M. KLEINFELTER (BPR #013889)


/s_____
WILLIAM N. HELOU (BPR #022839)
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-3505
Steve.Hart@state.tn.us

- 13 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on the 12th of April, 2007, that a copy of the above document has been served upon the following persons by:

 X     Hand Delivery and


 X     Electronic Case Filing (ECF) System to:

Robert L. Delaney
323 Union St., Fourth Fl
Nashville, TN 37201
(615) 244-3000

John Jay Hooker
115 Woodmont Boulevard
Nashville, TN 37205
(615) 269-6558
(615) 479-6531 (cell)

/s_____
STEVEN A. HART

- 14 -