# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JASON ANDREW JOHNSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:07-0372 |
| ) | JUDGE ECHOLS |
| PHIL BREDESEN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiffs Jason Andrew Johnson and the Tennessee Center for Policy Research ("TCPR") filed this 42 U.S.C. § 1983 action challenging the constitutionality of the Tennessee Plan for the selection and evaluation of Tennessee Supreme Court Justices, codified at Tenn. Code Ann. §§ 17-4-101, *et seq.*[1] In the Amended Verified Complaint Plaintiffs specifically assert that, under Article VI, § 3 of the Tennessee Constitution, they and other qualified state voters have a "property right" to vote in a popular election for Tennessee Supreme Court Justices, and that the retention election provided for in the Tennessee Plan--whether to fill a full eight-year judicial term or a vacancy during a term--does not constitute a popular election as contemplated by Article VI, § 3 of the Tennessee Constitution. Thus, Plaintiffs claim that the Tennessee Plan is unconstitutional, and it deprives them and other qualified voters of the "property right" to vote for a candidate of choice without due process, in violation of the Fourteenth Amendment to the United States Constitution.

Plaintiffs brought this action against Tennessee Governor Phil Bredesen, the chairman and members of the Tennessee Judicial Selection Commission, and Attorney General and Reporter Robert E. Cooper, Jr., in their official capacities. Plaintiffs also named as Defendants Tennessee Supreme Court Justices William M. Barker, Janice M. Holder, Cornelia A. Clark and Gary R. Wade,

---

[1]Although Plaintiffs also reference briefly the process for choosing appellate judges for Tennessee's intermediate courts of appeals, the facts alleged in the Amended Verified Complaint specifically concern the seats previously held by Supreme Court Justices E. Riley Anderson and Adolpho A. Birch, Jr., until they retired on August 31, 2006.

1

in both their individual and official capacities. It does not appear that any Supreme Court Justice has been served in his or her individual capacity.

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Docket Entry No. 11), to which the Defendants filed a response in opposition. The Court held a hearing on the Motion on Thursday, April 26, 2007, at which the parties presented oral argument. Plaintiffs seek to preclude Governor Bredesen from appointing one individual from a list of three nominees submitted to him by the Judicial Selection Commission in mid-April 2007 to fill the eight-year term which began on September 1, 2006, and which was previously held by Justice Birch.[2]

The Court must first address Defendants' contention that both Plaintiffs lack standing to pursue this matter. To establish standing to proceed, Plaintiffs must show that (1) they have suffered an injury in fact; (2) there is a causal connection between the injury and the challenged conduct; and (3) it must be likely that a favorable decision will remedy the injury. Hooker v. Sasser, 893 F.Supp. 764, 766-767 (M.D. Tenn. 1995) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "As further explained by the Supreme Court, an injury in fact must consist of 'an invasion of a legally-protected interest' which is 'concrete and particularized,'" as well as one which is actual or imminent and not simply conjectural or hypothetical. Id. at 767 (quoting Lujan).

The Court finds that TCPR does not have standing. Plaintiffs allege in the Amended Verified Complaint that TCPR "is an independent non-profit and non-partisan research educational institute[] chartered under the laws of Tennessee." (Docket Entry No. 1 at ¶ 2.) TCPR's President is Plaintiff Johnson, but Plaintiffs admit that TCPR does not have any members. TCPR's purpose is to "'[promote] personal freedom and limited government through policy solutions that [among others]

---

[2]Plaintiffs also challenge the constitutionality of Governor Bredesen's 2006 appointment of Supreme Court Justice Gary R. Wade to assume the seat previously held by Justice E. Riley Anderson. Because the preliminary injunction motion addresses only the seat formerly held by Justice Birch, the Court will not address at this time any issues concerning the seat formerly held by Justice Anderson.

2

promote and defend the rights guaranteed by the Tennessee and United States Constitutions [and] reflect the Founding Fathers' vision of a free society grounded in property rights and individual liberty based on personal responsibility.'" (Id.) As a non-profit organization, however, TCPR may not exercise a right to vote in any election. Thus, TCPR has no standing to assert the loss of a right to vote for Supreme Court Justices in a popular election if an injunction is not granted.

Neither North Dakota Family Alliance, Inc. v. Bader, 361 F.Supp.2d 1021, 1032 (D.N.D. 2005), nor Alaska Right to Life Political Action Committee v. Feldman, 380 F.Supp.2d 1080, 1082 (D. Alaska 2005), cited by Plaintiffs, applies here to convince the Court that TCPR has standing. In both of those cases, First Amendment free speech rights were at stake, and the courts relied on the Supreme Court's recognition that in First Amendment cases "there is justification to lessen the prudential limitations on standing." Bader, 361 F.Supp.2d at 1032. No such justification exists here.

Plaintiff Johnson alleges that he will be denied his right, grounded in the Tennessee Constitution, to vote in a popular election for Tennessee Supreme Court Justice if an injunction is not issued. While the existence of Plaintiff Johnson's standing is a close question, cf. Hooker, 893 F.Supp. at 767 (holding plaintiffs' allegations of diluted voting power and denial of right to have Senators exclusively elected by Tennessee citizens failed to show "distinct and palpable injury" to establish standing), the Court finds solely for purposes of this motion that Plaintiff Johnson has identified a "concrete and particularized" injury which he will suffer due to Defendants' conduct if an injunction is not granted.

## I. STANDARD OF REVIEW

In judging whether a preliminary injunction should issue, the Court must assess four factors: (1) Plaintiff Johnson's likelihood of success on the merits; (2) whether Plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction on the public interest. Tucker v. City of Fairfield, 398 F.3d 457, 461 (6th Cir. 2005).

3

## II. ANALYSIS

### A. Likelihood of success on the merits

The Court finds that Plaintiff Johnson has not demonstrated a strong or substantial likelihood of success on the merits of his federal constitutional claim brought under § 1983. While Plaintiff claims that he possesses a "property right" to vote in a popular election for Supreme Court Justice and that the Fourteenth Amendment to the U.S. Constitution protects him from deprivation of that "property right" without due process of law, Plaintiff must establish the independent source of his alleged "property right" in state, not federal, law. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Plaintiff initially contends that, under Article I, § 5, he is entitled to participate in a free and equal election for Supreme Court Justice. The "free and equal" requirement relates, however, only to the right of suffrage and not to the nature of elections. Mills v. Shelby County Election Comm'n, — S.W.3d —, 2006 WL 2257313 at * 7 (Tenn. Ct. App. Aug. 08, 2006); State ex rel. Hooker v. Thompson, 1996 WL 570090 at *4 (Tenn. 1996) (citing Bemis Pentecostal Church v. State, 731 S.W.2d 897, 901 (Tenn. 1987)).

Plaintiff also points to the Tennessee Constitution, Article VI, § 3, as the source of his right to vote in a popular election for Supreme Court Justice. That constitutional provision provides in pertinent part:

> **Sec. 3. Supreme court judges.–** The Judges of the Supreme Court shall be elected by the qualified voters of the State. The Legislature shall have power to prescribe such rules as may be necessary to carry out the provisions of section two of this article.[3]

---

[3]Section 2 of Article VI provides:

> **Sec. 2. Supreme court.–** The Supreme Court shall consist of five Judges, of whom not more than two shall reside in any one of the grand divisions of the State. The Judges shall designate one of their own number who shall preside as Chief Justice. The concurrence of three of the Judges shall in every case be necessary to a decision. The jurisdiction of this Court shall be appellate only, under such restrictions and

4

The Tennessee Supreme Court has affirmed the constitutionality of yes/no retention elections for Supreme Court Justices, holding that "[t]his constitutional requirement that members of the Supreme Court shall be elected by the qualified voters of the State is not self-executing." State by Shriver ex rel. Higgins v. Dunn, 496 S.W.2d 480, 487 (Tenn. 1973). Rather, "[p]rovisions must be made by law for nominating and qualifying of candidates, certification of results and the like." Id. "Such executory details can be provided either in the Constitution itself or left to the Legislature. They are entirely absent from Article 6, Section 3[,]" and thus the Legislature may fill in the necessary details. Id. In further support of its conclusion, the Supreme Court relied on Article VII, § 4, which provides:

> **Sec. 4. Other elections and vacancies.–**The election of all officers, and the filling of all vacancies not otherwise directed or provided by this Constitution, shall be made in such manner as the Legislature shall direct.

Higgins, 496 S.W.2d at 488. The Supreme Court further observed:

> Aside from the interplay of Article 7, Section 4, there is no direct conflict between Article 6, Section 3 and the Act of 1971. The election under the Act is still to be made at the regular election every eight years by the qualified voters of the State at the next general election. Specific provision is made for the election of the Governor's appointee at the next general election as provided by the Constitution. Article 6, Section 3, makes no provision for notice, nomination and qualification of candidates even where the vacancy occurs shortly before the next general election. The 1971 Act, of course, makes other provisions controlling the election of members of the appellate courts, the most notable and far-reaching of which are that the incumbent shall be required to run on his record and not against an opponent and that the Governor shall appoint from a list of three chosen by the Commission created by the Act.
>
> All of these provisions of the Act, it seems to us, derive from the general powers of the Legislature and, with particular reference to the power to fill vacancies in public office, from the express provisions of Article 7, Section 4 and, since none of them is either directly or by necessary implication contrary to the Constitution, the Act is constitutional and valid.

Id.

---

regulations as may from time to time be prescribed by law; but it may possess such other jurisdiction as is now conferred by law on the present Supreme Court. Said Court shall be held in Knoxville, Nashville and Jackson.

5

In construing the 1971 Act, the Supreme Court rejected the argument raised by Plaintiff here that "election" of Supreme Court Justices refers to the traditional popular election. Id. at 489. Because the Tennessee Constitution does not define the words, "elect," "election," or "elected," the Supreme Court noted three instances in which the Constitution provides for referenda and refers to them as "elections." Id. The Supreme Court reasoned:

> It seems to us that if the Constitution itself denominates these methods of ratification as elections, it cannot be that Chapter 198 is unconstitutional because the elections therein provided for are limited to approval or disapproval. So are the elections provided in Sections of the Constitution referred to above. This is particularly the case, since Article 7, Section 4 reposes wide discretion in the Legislature with respect to elections and the filling of vacancies.

Id. Thus, the 1971 Act, except for a provision not relevant here, was held to be constitutional. Id. at 490-491. Many years later, the Supreme Court reaffirmed the Higgins constitutional analysis[4] in construing the Tennessee Plan in State ex rel. Hooker v. Thompson, 1996 WL 570090 at **3-5 (Tenn. 1996). Cf. Delaney v. Thompson, 982 S.W.2d 857, 858 (Tenn. 1999) (declining to address constitutionality of Tennessee Plan and engaging in statutory construction of Tenn. Code Ann. §§ 17-4-115(c) and 17-4-116). This Court does not sit as an appellate court to affirm or reverse the constitutional holdings of the Tennessee Supreme Court. Principles of comity preclude this federal Court from overstepping its bounds and venturing into purely state-law matters which are best decided by state courts without the interference of a federal court. See Younger v. Harris, 401 U.S. 37, 43 (1971); Lillard v. Burson, 933 F.Supp. 698, 702 (W.D. Tenn. 1996).

Plaintiff Johnson asserts that Higgins is distinguishable because it concerned the filling of a judicial vacancy created by the death of the incumbent judge and the August election held two years prior to the expiration of the judicial term, whereas this case involves the full eight-year judicial term. The conclusion of the Higgins court that judicial retention elections pass

---

[4]While Plaintiff asserts that the entire constitutional analysis in Higgins was *obiter dictum* to be disregarded, this Court views the Supreme Court's constitutional reasoning as inherently necessary to reach the result in the Higgins case.

constitutional muster directs the outcome of this case even though the eight-year, rather than a two-year, term is at issue. The Tennessee Plan provides in pertinent part:

> **17-4-116. Failure to seek reelection – Nomination and appointment subject to election – Exception – Rejection of candidate – Appointment. –** (a) If an incumbent appellate court judge, whether appointed or elected, fails to file a declaration of candidacy for election . . . to a full eight (8) year term within the prescribed time . . . then a vacancy is created in the office at the expiration of the incumbent's term effective September 1. In this event the judicial selection commission shall furnish a list of nominees for the office to the governor as provided by § 17-4-109. From such list, the governor shall appoint a successor to fill the vacancy effective September 1. The appointment is subject to the action of the electorate in the next regular August election. The appointee shall file a declaration of candidacy and be voted on as provided in §§ 17-4-114 and 17-4-115.

Because of his retirement from the bench, Justice Birch did not file a declaration of candidacy for election to the full eight-year term beginning September 1, 2006. Under the plain language of § 17-4-116, a "vacancy" was created for Supreme Court Justice effective September 1, 2006. See also Tenn. Code Ann. § 17-4-112(a) ("When a vacancy occurs in the office of an appellate court after September 1, 1994, by death, resignation or otherwise, the governor shall fill the vacancy by appoint[ment].").[5] In accordance with the statute, the Judicial Selection Commission prepared a list of three nominees and submitted the list to Governor Bredesen, who rejected the list and requested a new one. The Commission submitted a second list of nominees, but the Governor believed the second list was improperly composed because it included the name of a candidate who had been included on the first list which the Governor had rejected. Following litigation in the state courts, Bredesen v. Tennessee Judicial Selection Comm'n, 214 S.W.3d 419 (Tenn. 2007), the

---

[5]Plaintiff contends that the retirement of Justice Birch at the end of his term did not create a "vacancy" as contemplated by Tenn. Code Ann. § 8-48-101. While arguably a decision to retire is in effect a resignation which creates a vacancy, see § 8-48-101(2), the specific statute at issue, Tenn. Code Ann. § 17-4-116(a), makes abundantly clear that when a Justice decides not to pursue a full eight-year term, a vacancy in that office is created which is to be filled by gubernatorial appointment followed by a retention election held at the next biennial August election, or in the case of a recommendation "against retention," a contested election. Tenn. Code Ann. §§ 17-4-114(c), 17-4-115(c).

7

Judicial Selection Commission submitted another list of nominees to the Governor, and the Governor's appointment of a Supreme Court Justice from that list of nominees is pending.

In light of Higgins, which was reaffirmed by the Tennessee Supreme Court after passage of the Tennessee Plan in 1994, Thompson, 1996 WL 570090 at **3-5, Plaintiff Johnson lacks a property right grounded in the Tennessee Constitution to vote in a popular election for the Supreme Court Justice who will fill Justice Birch's vacant seat. See Hooker v. Anderson, 12 Fed. Appx. 323, 324-325 (6th Cir. 2001) (affirming dismissal of § 1983 claim challenging constitutionality of Tennessee retention elections). Without such a property right established in state law, Plaintiff's likelihood of success on the merits of his § 1983 claim is slim indeed. This factor weighs in favor of Defendants.

**B. Irreparable harm**

Because Plaintiff has not shown that he has a property right to vote in a popular election for Supreme Court Justice which is protected by the Tennessee Constitution, it follows that Plaintiff also cannot show that any deprivation of such a right to vote would cause him irreparable harm. Moreover, the nominee ultimately appointed by Governor Bredesen to assume Justice Birch's seat must stand for a retention election at the next regular August election in 2008. Tenn. Code Ann. § 17-4-116(a). The Tennessee Constitution provides that "[n]o special election shall be held to fill a vacancy in the office of Judge . . . but at the time herein fixed for the biennial election of civil officers; and such vacancy shall be filled at the next Biennial election recurring more than thirty days after the vacancy occurs." Tennessee Const. Art. VII, § 5. Even if Plaintiff had a property right to vote in a popular election for Supreme Court Justice, irreparable harm would not arise until the approach of the August 2008 election. Additionally, in the event the Judicial Evaluation Commission recommends that the Justice named to the seat should not be retained, then a contested election for that seat will be held at the biennial election in August 2008. Tenn. Code Ann. § 17-4-114(c). This factor weighs against granting injunctive relief.

### C. Balance of harm to others

Given that Plaintiff Johnson has not demonstrated a strong or substantial likelihood of success on the merits of his claim or impending irreparable harm, the balance of relative harms among the parties and to others also weighs in favor of Defendants. This Court should not issue a preliminary injunction where Plaintiff has not shown an adequate basis for the relief he is seeking. Meanwhile, the Tennessee Supreme Court has only 4 of its 5 members in office. A majority opinion requires the concurrence of 3 members. The present number of justices is contrary to the constitutional requirement and increases the workload of the existing justices. This factor weighs in favor of Defendants.

### D. Public interest

Finally, the public interest will be served best if the Court does not grant the requested injunctive relief. While the public certainly has an interest in ensuring that state voting rights and federal constitutional rights are enforced, it is not in the public interest to enjoin Defendants' state legislative election processes for filling the current vacancy on the Tennessee Supreme Court where Plaintiff has not shown that he possesses a property right ground in state law that is protected by the federal Constitution.

### III. CONCLUSION

For all of the reasons stated, Plaintiffs Johnson and TCPR are not entitled to the preliminary injunctive relief they seek. Accordingly, their Motion for Preliminary Injunction will be DENIED.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE